IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EVERETTE LOVELESS,            )
AIS #238775,                  )
                              )
        Plaintiff,            )
                              )
    v.                        )        CASE NO. 2:08-CV-36-MEF
                              )              [WO]
                              )
COMM. RICHARD ALLEN, et al.,  )
                              )
        Defendants.           )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Everette

Loveless ["Loveless"], a state inmate, against Richard Allen, the commissioner of the

Alabama Department of Corrections, Ruth Naglich, an associate commissioner for the

Alabama Department of Corrections, J. C. Giles, the warden of Ventress Correctional

Facility ["Ventress"], Leon Forniss, the warden of Staton Correctional Facility ["Staton"],

and Correctional Medical Services, the health care provider for the state prison system.

In his initial complaint, Loveless asserts the correctional defendants acted with deliberate

indifference to his health when they allowed his transfer to J. B. Evans Correctional

Facility ["Evans"] in Newellton, Louisiana, a private correctional facility, in November of

2007.  Loveless filed an amendment to his complaint on November 7, 2008 in which he

alleges Correctional Medial Systems likewise acted with deliberate indifference when this entity permitted his transfer and refused to secure prompt and adequate medical treatment for rectal bleeding which began on December 31, 2007 during his incarceration in Louisiana. *Plaintiff's Amendment to the Complaint - Court Doc. No. 48* at 2.

The defendants filed special reports, answers and supporting evidentiary materials addressing each of Loveless' claims for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat these reports as motions for summary judgment. *Order of April 24, 2008 - Court Doc. No. 31*; *Order of December 4, 2008 - Court Doc. No. 55*; *Order of February 2, 2009 - Court Doc. No. 61*. Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the reports/motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c)

(Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motions for summary judgment, Loveless is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutionally inadequate medical treatment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th

4

Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (the plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment....").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).   What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine

6

issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Loveless fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

On November 5, 2007, Loveless, a diabetic with high blood pressure and Hepatitis C, arrived at Staton from Ventress en route to a private prison in Louisiana. Upon his arrival at Staton, Loveless "was afforded the opportunity to eat and receive [any prescribed] medication.... Feeding (Breakfast) on Third Shift commences at approximately 3:00 A.M. with Diabetics being fed first. Population Pill Call on Third Shift commences at approximately 3:15 A.M.. Inmate Loveless was afforded the opportunity to eat and receive medication on November 6, 2007.... On the morning of November 6, 2007, after hearing Inmate Loveless complaint that he was a Diabetic and should not be sent to

Louisiana; I had Inmate Loveless medical jacket reviewed by the Medical staff at Staton Correctional Facility.  The Medical Staff was advised of Inmate Loveless' complaint, reviewed his medical file, and based their decision [to allow his transfer] on the information available pertaining to [the] inmate's ... medical history and treatment.  Inmate Loveless was diagnosed as a Non-Insulin Dependent Diabetic and therefore suitable for transport...."  *Correctional Defendants' Exhibit B to the April 24, 2008 Special Report (Affidavit of Leon Forniss) - Court Doc. No. 30-2* at 2.  Consequently, correctional officials transported Loveless to J. B. Evans Correctional Facility in Louisiana for incarceration.

On December 31, 2007, Loveless "reported to prison medical personnel [at Evans] that he has begun experiencing rectal bleeding, and was transported to the Emergency Room [at the River Region Medical Center for evaluation]."  *Plaintiff's January 16, 2009 Response - Court Doc. No. 58* at 2.  The attending emergency care provider referred Loveless to Dr. Shawn W. Panzer for a follow-up examination on January 3, 2008.  *Id*. at 3.  Loveless asserts Alabama officials cancelled his appointment with Dr. Panzer and transferred him back into the custody of the Alabama Department of Corrections on January 10, 2008.  Loveless complains upon his return to the Alabama prison system the "defendants willfully, negligently, and with deliberate indifference to [his rectal bleeding] denied [him] access to prompt treatment and caused an unnecessary delay [in treating his condition]."  *Id*.

## A.  Absolute Immunity

With respect to claims lodged against the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear to the court that the defendants are state officials entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.

## B.  Negligence

To the extent the complaint alleges a claim of negligence with regard to the medical treatment provided to Loveless, this claim entitles him to no relief.  The law is well settled that the Constitution is not implicated by negligent acts of an official causing unintended loss of life, liberty or property.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (protections of the Constitution "are just not triggered by lack of due care by prison officials.").  Based on the foregoing, the court concludes that any claim based on alleged negligence by the defendants does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.

## C.  Deliberate Indifference - Transfer to Louisiana

Loveless alleges the defendants violated his constitutional rights when they allowed his transfer to a private facility in Louisiana despite his various medical issues.  The court construes this assertion as a claim of deliberate indifference to the plaintiff's health arising under the Eighth Amendment.  The defendants adamantly deny they acted with either callous disregard or deliberate indifference to Loveless' health when transferring him to Louisiana.

A state official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing

to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  A

constitutional violation occurs only "when a substantial risk of serious harm, of which the

official is subjectively aware, exists and the official does not 'respond[] reasonably to the

risk.'  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811

(1994).  A plaintiff must also show that the constitutional violation caused his injuries."

*Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

     In *Farmer*, the Court identified both objective and subjective elements necessary to

establish an Eighth Amendment violation.  With respect to the requisite objective elements,

an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].

Second, once it is established that the official is aware of this substantial risk, the official

must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-

1029.  As to the subjective elements, "the official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference....   The Eighth Amendment does not outlaw cruel and unusual

'conditions'; it outlaws cruel and unusual 'punishments.'  ...  ***[A]n official's failure to

alleviate a significant risk that he should have perceived but did not, while no cause for

commendation, cannot under our cases be condemned as the infliction of punishment***."

*Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364

(11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have

11

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491

(11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due

care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not***

***inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel

and Unusual Punishments Clause, whether that conduct occurs in connection with

establishing conditions of confinement, supplying medical needs, or restoring official

control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

(emphasis added).

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38,
> 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321,
> 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists - and the prison official must also "draw that
> inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a [correctional official's]

failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533,

1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes

clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under

section 1983...." *Id*.

Pursuant to the aforementioned criteria, Loveless is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

The record is completely devoid of evidence that the defendants acted with deliberate indifference in transferring Loveless to Louisiana. Loveless presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating an actual, subjective awareness of a substantial risk of such harm by these defendants, each of which is a required element of his Eighth Amendment claim. "Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Carter*, 352 F.3d at 1350 (footnote

omitted).  Consequently, summary judgment is due to be granted in favor of the defendants on this claim.

### D.  Denial of Adequate Medical Treatment

Loveless contends correctional and medical personnel failed to provide him prompt and adequate treatment for his rectal bleeding.  Specifically, Loveless alleges the defendants refused him a follow-up examination by a free-world physician in Louisiana on January 3, 2008 and failed to refer him for a colonoscopy upon his return to the custody of the Alabama Department of Corrections in January of 2008.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, prison officials and medical personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference).  Those responsible for providing medical treatment to an inmate may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable

15

measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825 (1994).

No extended discussion of the facts is necessary.  The record demonstrates that immediately upon notification of Loveless experiencing rectal bleeding Alabama officials arranged for his return to their custody and provided treatment for his condition.  The medical records filed herein demonstrate that during his incarceration in the Alabama prison system correctional medical personnel provided treatment to Loveless for his rectal bleeding, hypertension and Hepatitis C in accordance with their assessment of each of his conditions.  *Medical Defendants' Exhibits H thru I (Inmate Medical Records of Everette Loveless) - Court Doc. No. 41-1 thru Court Doc. No. 41-4*.  The undisputed evidentiary materials before the court demonstrate that correctional medical personnel routinely examined Loveless, thoroughly evaluated his complaints, ordered various tests, prescribed medications, referred Loveless to a free-world gastrointestinal specialist and rendered extensive treatment to Loveless in accordance with their professional judgment.  *Id*.

Dr. Paul Corbier, a licensed medical doctor assigned to Staton, delineates the treatment provided to Loveless as follows:

> Upon returning to Staton Correctional Facility, Mr. Loveless was seen by Dr. Evans on January 11, 2008.  Dr. Evans, pursuant to Mr. Loveless' chart, reviewed the medical file of Mr. Loveless, including the results of the colonoscopy that had been taken in 2007.  [Dr.] Evans' notes [and the inmate's medical records] indicate that Mr. Loveless had a prior history of polyps and internal hemorrhoids.  At that juncture, Dr. Evans ordered stool softeners and iron pills.
> I personally saw Mr. Loveless on January 24, 2008, as a follow-up for

16

Mr. Loveless' complaints of rectal bleeding.  I performed a rectal exam[ination] on Mr. Loveless, and noted that there was evidence of rectal bleeding.  Blood work was ordered at that time.

I again saw Mr. Loveless on January 31, 2008.  A CBC ["Complete Blood Count"] was ordered, and Mr. Loveless was given stool cards.  I also noted that an endoscopy should be considered in the future due to the condition of Mr. Loveless.

I next saw Mr. Loveless on February 7, 2008.  I reviewed his blood work and CBC, and noted that the hemoglobin level was in normal limits.  A liver function test also appeared to be normal.  It was noted in Mr. Loveless' chart that a colonoscopy had been performed in 2007, and although a follow-up colonoscopy may be needed in the future, it was not necessary at that immediate time.  The stool cards previously provided to Mr. Loveless were noted to be positive for blood.

On February 16, 2008, further blood work was ordered which indicated that Mr. Loveless' hemoglobin levels were elevated, which was a positive indication for Mr. Loveless' medical condition.

Mr. Loveless was next seen at the Health Care Unit on February 21, 2008.  The only complaints of Mr. Loveless at that time were foot pain, and he made no mention whatsoever of any problems associated with rectal bleeding.

Mr. Loveless was next seen at the Health Care Unit on April 3, 2008, by Nurse Practitioner Brad Adams.  Mr. Loveless was complaining of rectal bleeding on a daily basis.  Nurse Practitioner Adams noted in his records that Mr. Loveless had requested a colonoscopy, and Nurse Practitioner Adams documented that he had discussions with me regarding the referral for an endoscopy.  The referral of an endoscopy was in fact made on April 3, 2008.  Although the referral for an endoscopy was made on April 3, 2008, there was ... no immediacy to the referral.

Mr. Loveless was next seen at the Health Care Unit by Nurse Practitioner Brad Adams on April 16, 2008.  The notes from Nurse Practitioner Adams indicate that Mr. Loveless was asymptomatic with no evidence of bleeding and/or pain.

I next personally saw Mr. Loveless on May 16, 2008.  Mr. Loveless was complaining of stomach pain and dizziness.  The nurse also noted complaints of anxiety and night sweats.  [An appointment had been made for Mr. Loveless to see a gastrointestinal specialist on June 11, 2008.]  At that juncture I had a discussion with Mr. Loveless regarding his appointment with

the gastroenterologist.  Repeated blood work performed on Mr. Loveless on May 30, 2008, showed Mr. Loveless' condition to be stable.

Mr. Loveless was again seen personally by me on June 4, 2008.  I reviewed the lab work with Mr. Loveless which showed that his hemoglobin level was stable, and that there was no white blood count elevation.  I performed a physical examination on Mr. Loveless at that time.  There were no abnormal masses noted, although it was indicated that Mr. Loveless still had indications of lower GI bleeding, which showed the possibility of internal hemorrhoids.  Mr. Loveless was seen by an outside specialist, a gastroenterologist, Dr. Bianchi, on June 11, 2008, for a consultation.  Dr. Bianchi indicated that a colonoscopy would be scheduled.

On June 23, 2008, I personally ordered a prep for Mr. Loveless' colonoscopy.  The prep included a liquid diet which would begin at 3:00 p.m. prior to the date of the scheduled surgery.  The pre-surgery prep order called for Mr. Loveless to drink 8 ounces of Golightly every 10 minutes until the ordered amount had been completed.  Golightly is a laxative prep.

The medical staff at the correctional facility have no control over inmates arrival at the Health Care Unit.  Neither do the medical staff have any control over the inmates following medical directives when the inmates are not at the Health Care Unit.

Mr. Loveless was seen by Dr. Bianchi, and the colonoscopy was performed on July 2, 2008.  Dr. Bianchi's notes from July 2, 2008, indicate "areas of poor prep".  However, there can be no guarantee at any time of a full evaluation of all stool when a colonoscopy is performed.  The evacuation of stool is dependent on the individual and depends on a case-by-case situation.

However, I personally spoke with Dr. Bianchi after the colonoscopy had been performed, and was informed by Dr. Bianchi that the reading of the colonoscopy was sufficient to indicate that there were no medical problems at issue more than proctitis.  Therefore, Dr. Bianchi did not order an immediate follow-up colonoscopy but stated that a follow up colonoscopy may be necessary in twelve months.

After the colonoscopy was performed and a diagnosis of proctitis was made by Dr. Bianchi ... a prescription was written for Canasa, a rectal suppository for proctitis.  The prescription for Canasa was [filled] and supplied to Mr. Loveless.

Mr. Loveless was continued to be seen from July 2, 2008, through January 6, 2009, specifically by Domineek Guice, CRNP ["Certified

18

Registered Nurse Practitioner"].

I personally saw Mr. Loveless on January 6, 2009, when Mr. Loveless complained of continuing rectal bleeding. Therefore, a follow-up appointment has been made for Mr. Loveless to be seen yet again by Dr. Bianchi, the gastroenterologist.

At no time has anyone ever refused to see, treat, or care for Mr. Loveless during the time of his incarceration.

*Medical Defendant's Exhibit A to the February 2, 2009 Supplemental Special Report*

*(Affidavit of Dr. Paul Corbier) - Court Doc. No. 60-1 at 2-6.*

Darryl Ellis, a registered nurse and the director of nursing at Staton, further addresses the claims presented in the complaint:

Mr. Loveless' medical records indicate that he has had rectal bleeding on and off for approximately fourteen years. In fact, Mr. Loveless had a colonoscopy for rectal bleeding in February 2007. At that time, Mr. Loveless was diagnosed with polyps, which were removed, and Mr. Loveless was to be followed-up with another conlonoscopy in approximately 2010.

On June 11, 2008, Mr. Loveless was seen for a gastrointestinal consult with Dr. Bianchi, a gastrointestinal specialist practicing at the Elmore Community Hospital. Mr. Loveless was seen by Dr. Bianchi due to blood in his stool, and a history of polyps.

After the initial consultation on June 11, 2008, Dr. Bianchi recommended that Mr. Loveless undergo a colonoscopy. The colonoscopy was performed on July 2, 2008, at the Elmore Community Hospital. The colonoscopy revealed that Mr. Loveless had mild proctitis, which is an inflammation of the rectal and anal area. However, the colonoscopy showed no indications of polyps. Dr. Bianchi recommended a prescription of Anusol cream and a repeat colonoscopy [in] one year.

On July 9, 2008, the results from a biopsy that was performed in the bowel area of Mr. Loveless on July 2, 2008 were received at the correctional facility. The results from the biopsy again revealed mild proctitis. Dr. Bianchi recommended a prescription of Canasa. All prescriptions recommended by Dr. Bianchi had been made available to Mr. Loveless.

Mr. Loveless, as a chronic care patient, with diabetes, hypertension

19

and Hepatitis C, is routinely seen in the HCU Chronic Care Clinic by Domineek Guice, CRNP. Chronic care patients are generally seen in the HCU every three to six months unless they require specific attention. Lab work on chronic care patients such as Mr. Loveless is drawn approximately every three to six months. Mr. Loveless is given regular medications for his chronic care issues.

*Medical Defendant's Exhibit A to the December 3, 2008 Special Report (Affidavit of Nurse Darryl Ellis) - Court Doc. No. 54-1 at 2-3.*

Under the circumstances of this case, it is clear that the course of treatment undertaken by the defendants was neither grossly incompetent nor inadequate. Although Loveless asserts he should have been provided a different mode of treatment, this assertion fails to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment). It is undisputed that Loveless received medical treatment for his rectal bleeding as dictated by objective evaluations of his condition. Based on well settled law cited herein, his mere desire for a different mode of medical treatment does not amount

20

to deliberate indifference.  Loveless has failed to present any evidence which indicates the defendants knew the manner in which medical personnel treated his injuries created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Loveless's abrasions.  Consequently, summary judgment is due to be granted in favor of the defendants.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 8, 2010 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 25th day of August, 2010.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE